IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH J. MARINO | : | |
| | : | |
| V | : | |
| | : | No. 07-1389 |
| CROSS COUNTRY BANK and | : | |
| APPLIED CARD SYSTEMS | : | |

### PLAINTIFF'S MOTION TO AMEND COMPLAINT

Pursuant to Federal Rule of Civil Procedure 15(a), Plaintiff requests permission to amend his original complaint, which was filed on December 1, 2006 in the Delaware County Court of Common Please and then removed by Defendants to this Honorable Court on April 4, 2007. The proposed amended complaint adds a second count and joins one additional defendant who, in concert with the initially named defendants, engaged in acts of disparagement against Plaintiff in violation of a contractual undertaking by all parties to mutually refrain acts of disparagement. Plaintiff believes, and therefore avers that the new cause of action is not time barred by any applicable statute of limitations and that joinder of the additional defendant does not defeat the existence of diversity jurisdiction. The proposed Amended Complaint is attached hereto using Microsoft's "change tracking" edits for ease in seeing the exact amendments that Plaintiff proposes to make to the original complaint. No other amendments have been requested and no scheduling order has been issued in the case. A proposed form of Order is attached.

   Respectfully Submitted,

**GIBSON & PERKINS P.C.**

BY: KEVIN WILLIAM GIBSON
Suite 105
200 East State Street
Media PA 19063
610.565.1708
kevingibson@gibperk.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of June, 2007, I served a true and correct copy of

Plaintiff's Motion to Amend his Complaint upon the following by Electronic Mail only:

Guy A. Donatelli, Esquire
gdonatelli@chescolaw.com

_____

KEVIN WILLIAM GIBSON, ESQUIRE

EXHIBIT **A** TO PLAINTIFF MARINO'S MOTION TO AMEND
HIS COMPLAINT

EXHIBIT **A** TO PLAINTIFF MARINO'S MOTION TO AMEND
HIS COMPLAINT

EXHIBIT **A** TO PLAINTIFF MARINO'S MOTION TO AMEND
HIS COMPLAINT

EXHIBIT **A** TO PLAINTIFF MARINO'S MOTION TO AMEND
HIS COMPLAINT

EXHIBIT **A** TO PLAINTIFF MARINO'S MOTION TO AMEND
HIS COMPLAINT

EXHIBIT **A** TO PLAINTIFF MARINO'S MOTION TO AMEND
HIS COMPLAINT

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KENNETH J. MARINO                              :
1005 Baltusrol Lane                            :
Waxhaw, NC 28173                               :

    V                                   :          No. 07-1389

CROSS COUNTRY BANK                             :
50 Applied Card Way                            :
Glen Mills PA 19342                            :
                                               :
                                               : JURY TRIAL DEMANDED
                                               :
    And                                 :

APPLIED CARD SYSTEMS, INC.                     :
50 Applied Card Way                            :
Glen Mills, PA 19342                           :
                                               :
    And                                 :
                                               :
Rocco Abessinio                                :
50 Applied Card Way                            :
Glen Mills, PA 19342                           :
                                               :

> **Deleted:** 101 Beverly Square
>
> **Deleted:** Kennett Square
>
> **Deleted:** PA
>
> **Deleted:** 19348
>
> **Deleted:** .

## AMENDED COMPLAINT

1.  Plaintiff is Kenneth J. Marino is a resident and citizen of North Carolina, residing

at the address first above written.

> **Deleted:** the Commonwealth of Pennsylvania

2.  Defendant Cross Country Bank [CCB] is a Delaware banking corporation, with a

place of business at 800 Delaware Avenue, Wilmington, Delaware.

3.  Defendant Applied Card Systems, Inc. [ACS]is a Delaware banking corporation,

offices located at 50 Applied Card Way, Glen Mills, Pennsylvania. Upon information and

belief Defendant Abessinio is the President and/or CEO of Defendants CCB and/or ACS and can be served with judicial process at the offices of CCB and/or ACS.[1]

4.    Plaintiff is an attorney licensed to practice law in the Commonwealth of Pennsylvania.

5.    Plaintiff was employed by Defendants as their general counsel. From October 1, 200o until February 14, 2001.

6.    Plaintiff and Defendants entered into an employment contract on or about September 11, 2000.

7.    Plaintiff was terminated without cause by defendants for his efforts to change Defendants predatory lending practices.

8.    On or about September 4, 2003, plaintiff submitted an affidavit to the Attorney General of the State of New York in response to a duly executed subpoena issued in accordance with a then on-going criminal investigation into Defendants lending practices.

9.    On or about January 5, 2004, plaintiff brought an action for wrongful termination against Defendants in the United States District Court for the District Court of Delaware.

10.    Plaintiff and Defendant agreed to settle plaintiff's wrongful termination claim and plaintiff was released from all obligations of his employment contract with Defendants.

11.    On April 26, 2004, Defendants instituted a civil action against plaintiff in the Court of Commons Pleas of Chester County, Pennsylvania.[hereinafter sometimes called the "Chesco Complaint" said Complaint being attached hereto as Exhibit "A" and incorporated herein by reference]

---

[1] Mr. Abessinio also has homes in Delaware and Florida and Plaintiff is therefore unsure of Abessinio/s domicile/residency. However given Plaintiff's residence in North Carolina there is diversity jurisdiction as between Plaintiff and Mr. Abessinio regardless of whether he resides in Delaware, Florida or Pennsylvania.

12.    Defendants asserted three claims against plaintiff for breach of contract, breach of fiduciary duty and injunctive relief.

13.    On August 24, 2005, the Court of Common Pleas of Chester County dismissed all three claims made by Defendants against plaintiff.

14.    In dismissing defendants complaint, Judge Cody of the Court of Common Pleas of Chester County issued a bench opinion dated August 24, 2004 wherein she made the following findings of fact:

(a). Plaintiff was released from his obligations under his employment contract with Defendants and therefore was not liable for breach of contract;

(b). Plaintiff did not breach his fiduciary duty to plaintiffs or any Delaware Rule of Professional Conduct in his giving an affidavit to the Attorney General of the State of New York; and

(c). Defendants were not entitled to an injunction to restrain plaintiff from responding to the requests for information from law enforcement officials regarding Defendants predatory lending practices. [The Bench Opinion is attached as Exhibit "B" hereto which was followed by an Order of the same date which is the last page of Exhibit "B"]

COUNT ONE

Plaintiff v CCB and ACS

15.    An action for wrongful use of proceedings, known also as Pennsylvania's Dragonetti Act, is described in pertinent part by statute as follows:

§ 8351.  Wrongful use of civil proceedings

(a) Elements of action.--A person who takes part in the procurement, initiation or

continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

(1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing proper discovery, joinder of parties or adjudication of the claim which the proceedings are based; and

(2) The proceedings have terminated in favor of the person against whom they are brought.

16.    In the case at bar Defendants procured, initiated and continued a civil proceeding against Plaintiff herein.

17.    In the case at bar Defendants procuring, initiating and continuing the action against Plaintiff herein Defendants acted grossly and without probable cause in that Defendants adduced no facts of record that demonstrated that the action was initiated with probable cause where they knew that plaintiff had been released from his duties under the employment contract, and were aware that plaintiff was merely complying with a subpoena of the Attorney of New York pursuant to an on-going criminal investigation.

18.    Upon, information and belief, Defendants procured, initiated and continued the action against Plaintiff herein Defendants without probable cause for the improper purpose of preventing Plaintiff from testifying to certain Attorneys General regarding Defendants predatory lending practices.

19.    As a direct and proximate cause of the Defendants filing an improper civil action Plaintiff has been damaged by agreeing to pay instant counsel a sum in excess of $80,000 in the nature of attorneys fees incurred in defending against the action filed in Chester

County and then defending against the improvident appeals taken in that action all the
way to the Pennsylvania Supreme Court.

**Deleted:** having to pay attorneys fees to defend himself

20.   As a direct and proximate cause of the Defendants filing an improper civil action
Plaintiff has been damaged by suffering harm to his reputation.

21.   The defendants have acted so wantonly and grossly especially with due regard to
trying to use a civil action to prevent Plaintiff's testimony, that Plaintiff is entitled to an
award of punitive damages to deter such reprehensible conduct in the future.

WHEREFORE, Plaintiff demands judgment against Defendants jointly and
severally, for an amount in excess of $75,000, exclusive of costs and interest together
with an award of pre and post judgment interest and such other relief deemed appropriate
by court or jury.

### COUNT TWO

**Formatted:** Centered

### Plaintiff v CCB ACS and Rocco Abessinio

**Formatted:** Bullets and Numbering

22.   Plaintiff repeats and re-alleges paragraphs 1 through 21 above as if the same were
set forth at length herein.

23.   The termination of Plaintiff's employment as described above caused Plaintiff to
file a wrongful employment termination case against these same defendants said case
having been filed in the United States District Court for the State of Delaware said case
being filed on January 25, 2002.

24.   The parties hereto entered into a settlement agreement of the wrongful
termination case said settlement agreement being dated May 21, 2003. [The Settlement
Agreement is attached hereto as Exhibit "C" and the Agreement is incorporated herein by
reference]

25.   In paragraph 11 of the parties' settlement agreement the defendants undertook the explicit duty and obligation to refrain from disparaging Plaintiff in any fashion.

26.   Paragraph 11 of the settlement agreement states in pertinent part: "Defendants and those acting at defendants' direction, shall not disparage, either by written or spoken word, Kenneth J. Marino, via any medium whatsoever, including but not limited to, email and communications over the internet, either in their own names or under assumed names, identities or aliases. A violation of this paragraph shall be considered a breach of this Agreement entitling the violating party to equitable relief and attorneys' fees and expenses as more fully set forth in paragraph 15 below. Additionally, violation of this paragraph shall constitute breach of this Agreement requiring the violating party to disgorge any and all benefits received under this Agreement, including but not limited to the Settlement Sum if applicable.

27.   Paragraph 15 of the Settlement Agreement requires the violating party to pay all the fees and expenses of counsel for the party who is the victim of any violation of the Agreement.

28.   Defendants CCB, ACS and Mr. Abessinio are parties and signatories to the subject matter Settlement Agreement.

29.   At all times relevant, the lawsuit filed against Plaintiff as alleged above was filed at the behest and/or direction of Defendant Abessinio and at a point in time after the parties entered into the Settlement Agreement containing the Non Disparagement Clause described above.

30.   In paragraph 9 of the Complaint Defendants filed in the Chester County Court of Common Pleas ["Chesco Complaint" Exhibit "A" hereto] the Defendants contended that Plaintiff was a "disruptive" individual.

31.   In paragraph 21 through 29 of Chesco Complaint Defendants accused Plaintiff of being an unethical lawyer.

32.   As stated above Judge Cody in a Bench Opinion found that Plaintiff acted ethically at all times in discharging his duties as prior counsel for CCB and/or ACS.

33.   On page 9 of Judge Cody's Bench Opinion which is attached hereto she made a finding that the predatory lending practices of CCB and/or ACS was an ongoing "fraud".

34.   Defendants appealed Judge Cody's ruling to the Pennsylvania Superior Court and to the Pennsylvania State Supreme Court without success and thus Judge Cody's ruling is the "law of the case".

35.   In addition to disparaging Plaintiff in the particulars of the Chesco Complaint, on February 27, 2004 Defendant Abessinio provided an Affidavit in connection with legal proceedings taking place in West Virginia wherein Abessinio accused Plaintiff of extorting funds from CCB. [See Exhibit "D" hereto which is incorporated herein by reference]

36.   In paragraph 5 of said Affidavit which Plaintiff never saw or heard of until June 17, 2004, which is incorporated herein by reference, Abessinio made the following statement about Plaintiff "In my entire business experience I have never encountered anyone who manifested the level of anger, hostility and total disregard for ethical standards shown by Mr. Marino following his termination".

37.   In paragraph 9 of the Affidavit Abessinio claims that Plaintiff "was in breach of his fundamental duties as a lawyer" because Mr. Marino communicated with the New York Attorney Generals Office pursuant to a validly issued subpoena.

38.   The Defendants are without any privilege to make the disparaging comments they made in both the Chesco Complaint and the Abessinio Affidavit.

39.   Case law provides that the litigation privilege is inapplicable to shield parties who make disparaging remarks when those same parties have contractually undertaken a duty to refrain from making disparaging remarks. See Generally Eichelkraut v Camp 513 SE2d 267 (Ga. App 1999).

40.   The legal fees and expenses incurred by instant counsel for Plaintiff in defending against the Chesco Complaint up through and including the briefing and oral arguments necessitated by the Defendants improvident appeal of Judge Cody's ruling stand in excess of $80,000 and are recoverable as damages under the Dragonetti laws as well as provided for in paragraphs 11 and 15 of the subject matter Settlement Agreement.

41.   In addition to disparaging Plaintiff as set forth above, the Defendants CCB/ACS are presently engaged in a campaign to thwart Plaintiff's application to be admitted as a member of the bar of and for the State of North Carolina by suggesting Plaintiff lacks the required fitness and integrity to become a member of that Bar.

42.   Plaintiff has incurred additional attorneys fees in defending against CCB/ACS improper attempts to thwart Plaintiff's admission to the North Carolina Bar.

WHEREFORE, Plaintiff demands judgment against Defendants jointly and severally, for an amount in excess of $75,000, exclusive of costs and interest together

with an award of pre and post judgment interest and such other relief deemed appropriate

by court or jury.

Respectfully submitted,
GIBSON & PERKINS P.C.

_____
BY: KEVIN WILLIAM GIBSON

Gibson & Perkins PC

200 East State Street

Media PA 19063

610.565.1708

kevingibson@gibperk.com



**Deleted:** WHEREFORE, Plaintiff demands judgment against Defendants jointly and severally, for an amount in excess of $75,000 together with an award of pre and post judgment interest and such other relief deemed appropriate by court or jury.¶
¶
R

**Formatted:** Line spacing:  single

**Deleted:** VERIFICATION¶
¶
  I, Kenneth J. Marino, Plaintiff, herein, verify that he has personal knowledge of this matter and that the facts set forth in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.¶
  I understand that the statements made herein are subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.¶
. ¶
¶
¶
¶
_____¶
_____
_____ Kenneth J. Marino¶
¶

EXHIBIT "A"

EXHIBIT "A"

EXHIBIT "A"

EXHIBIT "A"

EXHIBIT "A"

## CIVIL COVER SHEET AND ENTRY OF APPEARANCE

## DELAWARE COUNTY COURT OF COMMON PLEAS

Court Term and No.

06-16898

1. Case Caption:
**Kenneth J. Marino**
v.
**Cross Country Bank and**
**Applied Card Systems, Inc.**

2a. Plaintiff(s)
   *(name and address)*
**Kenneth J. Marino**
**101 Beverly Square**
**Kennett Square, PA  19348**

___X___ Jury
_____ Non-Jury
_____ Arbitration
($0-$50,000)

2b. Defendant(s)
   *(name and address)*
**Cross Country Bank**
**50 Applied Card Way**
**Glen Mills, PA  19342**

**Applied Card Systems, Inc.**
**50 Applied Card Way**
**Glen Mills, PA  19342**

3a. Related Cases? _____ Yes __X__ No
   *If yes, show Caption and Case Numbers*

3b. Case subject to Coordination Order? ___ Yes __X__ No
   *If yes, show Caption and Date of Order*

4.  Entry of Appearance

   To the Office of Judicial Support:
      Kindly enter my appearance on behalf of __**Kenneth J. Marino,**__ plaintiff in this action.  Papers may be
      served at the address set forth below.

   _Kevin William Gibson, Esquire_____

   Attorney for party named above *(please print)*

   ___31729_____
   Attorney I.D. Number

Address:  **GIBSON & PERKINS, P.C.**
            Suite 105, 200 East State Street
            Media, PA  19063

Telephone:(610)_565.1708____
Fax:(610)_565-4358_____

E-Mail:   _kevingibson@gibperk.com____

   _____
   Attorney Signature

            ___December 1, 2006____
                        Date

*REVERSE Side Must Be Completed*

*Choose only the one description which best reflects the principal type of case or relief sought from the list.*

**Case Description**

| | |
|---|---|
| **APPEAL** | Intentional Tort |
| |    Assault and Battery ____ |
| **Minor Court** |    Libel and Slander ____ |
|    Money Judgment |    Defamation ____ |
|    Landlord and Tenant ____ | Employment/Wrongful Discharge |
|    Code Enforcement ____ |    False Imprisonment ____ |
|    Personal Injury ____ |    Fraud ____ |
|    Breach of Contract ____ |    Malicious Prosecution ____ |
|    Other_____ ____ | Negligence |
| |    Motor Vehicle ____ |
| **Local Agency** |    Real Property ____ |
|    Civil Service ____ |    Premises Liability ____ |
|    Motor Vehicle ____ |    Product Liability ____ |
|    Licenses and Inspections ____ |    Toxic Tort ____ |
|    Liquor Control Board ____ |      **Asbestos** |
|    Tax Assessment Boards ____ |      DES ____ |
|    Zoning Board ____ |      Implant ____ |
|    Other_____ ____ |    Toxic Waste ____ |
| |    Other_____ ____ |
| **Proceedings Commenced by Petition** | Professional Malpractice |
| Appointment of Arbitrators ____ |    Dental ____ |
| Change of Name ____ |    Legal ____ |
| Compel Medical Examination ____ |    Medical ____ |
| Election Matters ____ |    Other_____ ____ |
| Eminent Domain ____ | Declaratory Judgment ____ |
| Leave to Issue Subpoena ____ | Ground Rent ____ |
| Mental Health Proceedings ____ | Mandamus ____ |
| Other_____ ____ | Real Property |
| |    Ejectment ____ |
| **CIVIL ACTIONS COMMENCED BY** |    Quiet Title ____ |
| **WRIT OF SUMMONS OR COMPLAINT** |    Mortgage Foreclosure ____ |
| Abuse of Process ____ |    Mechanics Lien ____ |
| Action for Wrongful Death ____ |    Partition ____ |
| Class Action ____ |    Prevent Waste ____ |
| Confession of Judgment/Money ____ | Replevin ____ |
| Confession of Judgment/Real Property ____ | Saving Action Um/Uim ____ |
| Contract | Quo Warranto ____ |
|    Construction ____ | Other_____ ____ |
|    Insurance/Bad Faith ____ | |
|    Negotiable Instruments ____ | |
|    Other _**Dragonetti – Wrongful Use** | |
|      **Of Civil Proceeding**_ **X** | |

IN THE DELAWARE COUNTY COURT OF COMMON PLEAS
OF AND FOR THE STATE OF PENNSYLVANIA

KENNETH J. MARINO                        :
101 Beverly Square                       :
Kennett Square, PA 19348                 :
          v.                             :
CROSS COUNTRY BANK                       :  NO.
50 Applied Card Way                      :
Glen Mills PA 19342                      :
                                         : JURY TRIAL DEMANDED
          And                            :
APPLIED CARD SYSTEMS, INC.               :
50 Applied Card Way                      :
Glen Mills, PA 19342                     :

## NOTICE

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by an attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERRAL SERVICE
DELAWARE COUNTY BAR ASSOCIATION
FRONT AND LEMON STREETS
MEDIA, PA  19063
(610) 566-6625

GIBSON & PERKINS P.C.
BY: KEVIN WILLIAM GIBSON, ESQUIRE
I.D. NO.: 31729
200 East State Street
Suite 105
Media, PA 19063
610.565.1708
610.565.4358 [fax]
kevingibson@gibperk.com                                    **Attorney for Plaintiff**

IN THE DELAWARE COUNTY COURT OF COMMON PLEAS
OF AND FOR THE STATE OF PENNSYLVANIA

KENNETH J. MARINO                         :
1005 Baltusrol Lane                       :
Waxhaw, North Carolina 28173              :
                                          :
          v                               :
                                          :     No.
CROSS COUNTRY BANK                        :
50 Applied Card Way                       :
Glen Mills PA 19342                       :
                                          :
                                          : JURY TRIAL DEMANDED
                                          :
          And                             :
                                          :
APPLIED CARD SYSTEMS, INC.                :
50 Applied Card Way                       :
Glen Mills, PA 19342                      :
                                          :
                                          :
                                          :
                                          :
                                          :

## COMPLAINT

1.    Plaintiff is Kenneth J. Marino is a resident and citizen of the State of North

Carolina, residing at the address first above written.

2.    Defendant Cross Country Bank is a Delaware banking corporation, with a place

of business at 800 Delaware Avenue, Wilmington, Delaware.

3.    Defendant Applied Card Systems, Inc. is a Delaware banking corporation, offices located at 50 Applied Card Way, Glen Mills, Pennsylvania.

4.    Plaintiff is an attorney licensed to practice law in the Commonwealth of Pennsylvania.

5.    Plaintiff was employed by Defendants as their general counsel. From October 1, 200o until February.14, 2001.

6.    Plaintiff and Defendants entered into an employment contract on or about September 11, 2000.

7.    Plaintiff was terminated without cause by defendants for his efforts to change Defendants predatory lending practices.

8.    On or about September 4, 2003, plaintiff submitted an affidavit to the Attorney General of the State of New York in response to a duly executed subpoena issued in accordance with a then on-going criminal investigation into Defendants lending practices.

9.    On or about January 5, 2004, plaintiff brought an action for wrongful termination against Defendants in the United States District Court for the District Court of Delaware.

10.    Plaintiff and Defendant agreed to settle plaintiff's wrongful termination claim and plaintiff was released from all obligations of his employment contract with Defendants.

11.    On April 26, 2004, Defendants instituted a civil action against plaintiff in the Court of Commons Pleas of Chester County, Pennsylvania.

12.    Defendants asserted three claims against plaintiff for breach of contract, breach of fiduciary duty and injunctive relief.

13.    On August 24, 2005, the Court of Common Pleas of Chester County dismissed all three claims made by Defendants against plaintiff.

14.    In dismissing defendants complaint, the Court of Common Pleas made the following findings of fact:

(a). Plaintiff was released from his obligations under his employment contract with Defendants and therefore was not liable for breach of contract;

(b). Plaintiff did not breach his fiduciary duty to plaintiffs or any Delaware Rule of Professional Conduct in his giving an affidavit to the Attorney General of the State of New York; and

(c). Defendants were not entitled to an injunction to restrain plaintiff from responding to the requests for information from law enforcement officials regarding Defendants predatory lending practices.

15.   An action for wrongful use of proceedings, known also as Pennsylvania's Dragonetti Act, is described in pertinent part by statute as follows:

§ 8351.  Wrongful use of civil proceedings

(a) Elements of action.--A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

(1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing proper discovery, joinder of parties or adjudication of the claim which the proceedings are based;  and

(2) The proceedings have terminated in favor of the person against whom they are brought.

16.   In the case at bar Defendants procured, initiated and continued a civil proceeding against Plaintiff herein.

17.   In the case at bar Defendants procuring, initiating and continuing the action against Plaintiff herein Defendants acted grossly and without probable cause in that Defendants adduced no facts of record that demonstrated that the action was initiated with probable cause where they knew that plaintiff had been released from his duties

under the employment contract, and were aware that plaintiff was merely complying with a subpoena of the Attorney of New York pursuant to an on-going criminal investigation.

18.    Upon, information and belief, Defendants procured, initiated and continued the action against Plaintiff herein Defendants without probable cause for the improper purpose of preventing Plaintiff from testifying to certain Attorneys General regarding Defendants predatory lending practices.

19.    As a direct and proximate cause of the Defendants filing an improper civil action Plaintiff has been damaged by having to pay attorneys fees to defend himself.

20.    As a direct and proximate cause of the Defendants filing an improper civil action Plaintiff has been damaged by suffering harm to his reputation.

21.    The defendants have acted so wantonly and grossly especially with due regard to trying to use a civil action to prevent Plaintiff's testimony, that Plaintiff is entitled to an award of punitive damages to deter such reprehensible conduct in the future.

WHEREFORE, Plaintiff demands judgment against Defendants jointly and severally, for an amount in excess of $75,000 together with an award of pre and post judgment interest and such other relief deemed appropriate by court or jury.

Respectfully submitted,
GIBSON & PERKINS P.C.

BY: KEVIN WILLIAM GIBSON

## VERIFICATION

I, Kenneth J. Marino, Plaintiff, herein, verify that he has personal knowledge of this matter and that the facts set forth in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

I understand that the statements made herein are subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

Kenneth J. Marino

**EXHIBIT "B"**

**EXHIBIT "B"**

**EXHIBIT "B"**

**EXHIBIT "B"**

**EXHIBIT "B"**

**EXHIBIT "B"**

1          IN THE COURT OF COMMON PLEAS

2            FOR THE COUNTY OF CHESTER

3                   - - - - -
  CROSS COUNTRY BANK and      )
4 APPLIED CARD SYSTEMS, INC.,)
                             )
5            Plaintiffs        )
                             )
6        VS.                   )    No. 04-032303
                             )
7 KENNETH J. MARINO,          )
                             )
8            Defendant        )
                   - - - - -
9                         Courtroom No. 10
                          Chester County Courthouse
10                        West Chester, Pa.  19380
                          August 24, 2005
11                        11:55 a.m.

12

13 BEFORE:    THE HONORABLE JACQUELINE C. CODY

14

15

16 APPEARANCES:

17
            LAW OFFICES OF JOSEPH A. CAPRARA
18          BY: JOSEPH A. CAPRARA, ESQUIRE
            Attorney for the Plaintiffs
19
            GIBSON & PERKINS, P.C.
20          BY: KEVIN WILLIAM GIBSON, ESQUIRE
            Attorney for the Defendant
21

22

23
                     Frances A. White
24                   Official Court Reporter

1    P R O C E E D I N G S

2        THE COURT:  All right.  I have considered

3    carefully everything that has been offered in

4    this case.  I know how important it is to all of

5    the parties.  I wish that what I decided today

6    would settle some things, but it sounds as though

7    that's not to be.  I would encourage the parties

8    to really take a look at what you are doing and

9    see if whether or not after today you can try to

10    put all of this to rest and go on with your lives

11    and get on to something more meaningful, but

12    that's beside the point.

13        My job today is to consider the evidence

14    that was offered, to find facts and to apply the

15    law to those facts and reach conclusions as to

16    whether or not the plaintiffs have met their

17    burden of proof and should prevail on the issues

18    that I have to decide.  If they do not meet their

19    burden of proof, then, of course, the verdict

20    must be for the defendants.

21        So taking the counts a bit out of order,

22    and I'm going to address first Count 2 of the

23    complaint, which deals with the allegation of a

24    breach of contract, I make the following findings

1    of facts and conclusions of law:

2        There was a valid contract entered into

3    between the parties on September 11th, 2000.

4    That was an employment agreement.  It contained a

5    confidentiality clause.

6        Approximately four months later, the

7    defendant, Mr. Marino, was terminated from his

8    employment and escorted from the building of the

9    plaintiffs'.  Litigation ensued over this

10   termination.  That was in the Delaware courts.

11   The matter was litigated apparently somewhat, but

12   didn't go to trial, and was settled by way of a

13   detailed agreement, which was Exhibit D-1.

14       D-1 resolved the dispute that was between

15   the parties at that time and included detailed

16   mutual releases, including a release which

17   extinguished the employment contract and any

18   future claims arising under it.  And I refer

19   specifically to paragraph three, where the

20   plaintiffs in this case released the defendant in

21   this case and discharged Mr. Marino from all

22   future claims, damages, causes of actions of any

23   nature relating to the employment agreement.

24       Accordingly, there cannot be any damages

awarded to plaintiffs for any alleged violation
of the confidentiality provision of that contract
because the contract was extinguished by the
settlement in the wrongful termination suit.   On
the contract count, I found in favor of the
defendant and against the plaintiffs in no
amount.

        The count charging a breach of fiduciary
duty, generally an attorney owes his client the
duty of confidentiality.   The plaintiffs alleged
here that the defendant breached that duty of
confidentiality by two disclosures:   One to the
Attorney General of New York by way of an
affidavit which was generated sometime -- I
believe it was September of 2003.   The other way
that the plaintiffs alleged that the defendant
violated the fiduciary duty of confidentiality
was by filing a lawsuit.   I can't recall if that
was in Delaware Chancery Court or U.S. District
Court in Delaware, but at any rate, a lawsuit
against a law firm, Richards, Layton & Finger,
and an attorney, Mr. Herrmann.   Mr. Herrmann was
a member of the board of directors of the
plaintiffs' bank and/or credit card company, and

1  he worked for the law firm of Richards, Layton &
2  Finger.
3          The plaintiffs point out that this
4  lawsuit really was involved with the activities
5  of the bank and the credit card company. It was
6  not a separate individual case having no
7  connection with the bank or the credit card
8  company. And while the defendants dispute that,
9  I find that the plaintiffs are correct, in that
10 this was all involved with things that had gone
11 on between the parties because of their
12 connection with and employment with the bank and
13 credit card company.
14         The affidavit to the Attorney General of
15 New York by Mr. Marino was done after Mr. Marino
16 had initiated contact with the Attorney General
17 of New York because there was already ongoing
18 litigation by the Attorney General against the
19 plaintiffs in this case. Before the affidavit
20 was issued, the Attorney General of New York
21 issued a subpoena compelling Mr. Marino's
22 appearance for a deposition regarding the ongoing
23 allegations by the Attorney General of New York
24 against the bank and credit card company. He,

Mr. Marino, was given the option to submit an
affidavit rather than appear for the deposition.
Although the technical provisions of
domesticating that subpoena to wherever it was
that Mr. Marino resided or worked -- I can't
remember if it was Pennsylvania or Delaware, but
clearly it was not New York, but those
domestication processes did not occur.  However,
I find that to be insignificant in this case.

Certainly had Mr. Marino demanded that
the Attorney General go to that time and expense,
that could have been done, but at any rate, it
was clear that there was a subpoena issued by a
governmental agency, which is dedicated to making
sure that banks and credit card companies comply
with the law, and the affidavit was in response
to that.

The plaintiffs in this case do not allege
that the defendant revealed any trade secrets or
information of that nature which might give a
competitor an unfair advantage in the ordinary
course of business.  The plaintiffs do not allege
that the defendant gave false information to the
Attorney General of New York or included

1   information in the lawsuit against the law firm

2   and Mr. Herrmann.

3          The plaintiffs allege that the defendant

4   revealed information relating to predatory

5   lending practices and other illegal activities

6   which caused financial harm to thousands of the

7   bank and credit card customers.   The plaintiffs

8   claim that that information must remain

9   confidential and that no one should be able to

10  give that information to the authorities.

11         We consider the Rules of Professional

12  Conduct for Delaware attorneys, and those rules,

13  specifically 1.6, provide that lawyers shall not

14  reveal information relating to representation of

15  a client without the client's consent except in

16  certain circumstances.

17         In first considering the affidavit of Mr.

18  Marino to the Attorney General in New York, I

19  have considered specifically Rule 1.6 (b)(3) and

20  (b)(6) and find that those exceptions apply.

21         With regard to the information that

22  exists in the lawsuit against RL&F and Herrmann,

23  I looked to exception (b)(5), and I find that

24  those exceptions apply.   Because they are

exceptions, there is no requirement that the attorney get the consent of the client in revealing information in those circumstances.

I recognize that the Rules of Professional Conduct do not fully answer questions regarding the breach of fiduciary duty, which is a common law tort action, but I find them to be helpful, and I do find them to be consistent with common law.

I find that it is against public policy to require a lawyer who is involved in representing a client while the client ignores the lawyer's advice and perpetrates ongoing fraud and other crimes, it is against public policy to require that lawyer to remain silent. That would require the lawyer to become a coconspirator in the crimes, and that is against public policy.

Also, public policy would not support a law that would require that any client can do any wrong to an attorney, and the attorney cannot seek redress in a court of law because of the attorney-client privilege. It is a privilege. It is not a way to evade responsibility for ongoing wrongdoing.

1    It is a separate matter to have an

2  attorney-client privilege where someone is

3  accused of a crime and afterwards, after an

4  arrest, goes to an attorney and has to have that

5  type of privilege in order to get advice and that

6  sort of thing.  I find this to be an entirely

7  different matter because of the ongoing nature of

8  it and the fact that the attorney, as general

9  counsel to the plaintiffs, was involved in the

10  ongoing practices of the business.  To require

11  him to remain silent, as I said, would require

12  him to become a coconspirator in those

13  activities.

14    For the reasons I've stated, I find that

15  there was no breach of fiduciary duty and

16  certainly there are no damages suffered by

17  plaintiffs as a result of what was revealed.

18    When I looked to the request for an

19  injunction, I recognized that there was an

20  injunction issued after a conference between the

21  Court and the attorneys and by agreement, after

22  that conference, an injunction was issued on May

23  18th, 2004.  I find that that is not a proper

24  injunction and it is hereby dissolved.  There is

1   no attorney-client privilege that has been
2   violated, and there is no attorney-client
3   privilege that I have any evidence anyone is
4   intending to violate in the future.
5           I want to make it very clear to the
6   parties that I find that Mr. Marino is not
7   precluded from answering inquiries by any other
8   law enforcement agencies or Attorneys General in
9   any other state in the nation.  That is my
10  specific finding after having heard all of the
11  testimony and litigated that particular issue.
12          So I do not find that there is any
13  attorney-client privilege that applies there.  I
14  am dissolving that injunction.  There is no
15  requirement that Mr. Marino notify you before he
16  tells people what he knows about the ongoing
17  activities of the bank.  You are on notice from
18  this that he may do that, and he is not required
19  to give you any further notice whatsoever if
20  anyone from law enforcement calls and asks what
21  he knows about this.  I just want to make sure
22  that it is very clear, so that this is not
23  litigated over and over and over.
24          I also want to make it very clear,

because I have some concern that perhaps my
injunction, which required notice, gave other
courts pause in thinking that it was my
impression that an attorney-client privilege
existed, I had not determined that point at the
time I issued that injunction.  I issued that
injunction with agreement of the parties on a
temporary basis until full litigation.  Now that
I have done that, I just want to make it clear
that I do not find that it applies.  I do not
find that there has been any violation
whatsoever.

        I believe that that concludes this
matter.  In summary, I find in favor of the
defendant and against the plaintiffs on all
counts.

        Thank you.

        MR. CAPRARA:  Your Honor --

        MR. GIBSON:  Thank you, Your Honor.

        MR. CAPRARA:  -- may I ask that you
continue the injunction for 30 days to give us an
opportunity to seek an emergency appeal?

        THE COURT:  No, sir.  It is dissolved
immediately.

12

1                    (Proceedings concluded at 12:10 p.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1                    C E R T I F I C A T E

2

3          I hereby certify that the proceedings,

4    evidence, and rulings are contained fully and

5    accurately in the notes taken by me on the trial

6    of the above cause, and that this copy is a

7    correct transcript of the same.

8

9

10                     OFFICIAL COURT REPORTER

11

12

13          The foregoing record of the proceedings

14    upon the trial of the above cause is hereby

15    approved and directed to be filed.

16

17

18                     ----------JUDGE----------

19

20

21

22

23

24

CROSS COUNTRY BANK and      : IN THE COURT OF COMMON PLEAS
APPLIED CARD SYSTEMS, INC.,
                     Plaintiffs    : CHESTER COUNTY, PENNSYLVANIA
       VS.
                             : CIVIL ACTION – LAW

KENNETH J. MARINO,            : NO. 04-03203
                Defendant

Joseph A. Caprara, Esquire, on behalf of Plaintiffs
Kevin William Gibson, Esquire, on behalf of Defendant

## VERDICT

AND NOW, this 24ᵗʰ day of August, 2005, following trial of the above-captioned

matter by the undersigned, sitting without a jury, we find in favor of Defendant and against

Plaintiffs on all counts. Plaintiffs' Complaint is DISMISSED with prejudice.

It is further ORDERED that the injunction entered by agreement of the parties after

conference with the Court on May 17, 2004, is hereby VACATED.[1]

BY THE COURT:

_Jacqueline C. Cody_
                                   J.

---

[1] At trial in the above-captioned matter, the parties specifically and thoroughly litigated the issue of whether the attorney-client privilege precludes Mr. Marino from disclosing information regarding predatory lending practices and other illegal activities of Plaintiffs with attorneys general of various states, or other law enforcement officials. We specifically find that the attorney-client privilege does not apply and does not preclude Mr. Marino from answering inquiries or testifying at the request of attorneys general regarding information acquired by Mr. Marino during his employment as general counsel to Plaintiffs.

Additional findings of fact and conclusions of law supporting this verdict were entered on the record in open court, immediately following trial of the above-captioned matter.

**EXHIBIT "C"**

**EXHIBIT "C"**

**EXHIBIT "C"**

**EXHIBIT "C"**

**EXHIBIT "C"**

**EXHIBIT "C"**

**EXHIBIT "C"**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KENNETH J. MARINO,

       Plaintiff,

       v.

CROSS COUNTRY BANK,
APPLIED CARD SYSTEMS, INC., and
ROCCO ABESSINIO,

       Defendants.

:
:
:
:
:
:
:
:
:
:
:

C.A. No. 02-065 GMS

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2003 JUL -1  PM 1:31

## STIPULATION OF DISMISSAL

Pursuant to Federal Rule of Civil Procedure 41(a)(1), the parties, by and through their

undersigned counsel, hereby stipulate to the dismissal of this action, with prejudice. The parties

hereto irrevocably consent to the exclusive jurisdiction of this Court for any claims or disputes

between or among the parties arising out of, or relating to, the Settlement Agreement and Mutual

General Release executed by and between the parties, and this Court shall reserve jurisdiction to

enforce the provisions of this Agreement.

DATED: _5 / 1 / _____, 2003

DUANE MORRIS LLP

_____
John L. Reed (I.D. No. 3025)
Timothy R. Dudderar (I.D. No. 3890)
1100 N. Market Street, 12th Floor
Wilmington, DE 19801
Tel.: 302.657.4900
Fax.: 302.657.4901

    -and-

BUCHANAN INGERSOLL, P.C.

_____
David E. Wilks
1201 N. Market Street, Suite 1501
Wilmington, DE 19801
Tel.: 302.428.5551
Fax: 302.428.3996

Attorney for the Plaintiff

## SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This Settlement Agreement and Mutual General Release (hereinafter, the "Agreement") is

made this _____ day of _____, 2003, by and between Kenneth J. Marino, on the one hand,

and Cross Country Bank, Applied Card Systems, Inc. and Rocco A. Abessinio, on the other.

### RECITALS UNDERLYING THE AGREEMENT

### RECITAL A

As used herein, "Plaintiff" shall mean and include Kenneth J. Marino and any and all of

his heirs, heirs at law, next of kin, successors, assigns, employees, attorneys and representatives.

"Defendants" shall mean and include Cross Country Bank ("CCB"), Applied Card

Systems, Inc. ("ACS"), any and all of their past, present and future agents, employees,

representatives, predecessors, successors, parents, subsidiaries, divisions, officers, principals,

shareholders, insurers, directors, assigns, distributors, wholesalers, dealers, affiliates and

attorneys; and Rocco Abessinio and any of his heirs, heirs at law, next of kin, successors, assigns,

employees, attorneys and representatives.[1]

### RECITAL B

On or about September 11, 2000, the parties entered into a written Employment

Agreement under which Plaintiff was to serve as Defendants' General Counsel. Plaintiff's

employment was subsequently terminated on or about February 14, 2001.

---

[1] As referenced herein, "attorneys" shall mean any and all of defendants' attorneys past, present or future including, but not limited to, John L. Reed, Esquire, Timothy R. Dudderar, Esquire, David L. Braverman, Esquire, Michelle S. Walker, Esquire and Stephen E. Herrmann, Esquire. "Officers" shall include James M. Dougherty, Paul C. Seitz, and Dennis Fish.

RECITAL C

On July 11, 2001, Defendants initiated an arbitration proceeding against the Plaintiff, arising out of the Employment Agreement, styled *Cross Country Bank/Applied Card Systems and Kenneth J. Marino*, No. 14-160-00236-01-ENH (the "Arbitration Case"). In the Arbitration Case, Plaintiff filed a counterclaim.

RECITAL D

On January 25, 2002, Plaintiff commenced an action against the Defendants in the United States District Court for the District of Delaware, captioned as *Marino v. Cross Country Bank, et al.*, No 02-065 GMS (the "Federal Litigation"). The Federal Litigation asserted claims which arose out of Plaintiff's employment relationship with Defendants.

RECITAL E

· On June 6, 2002, the parties filed a Joint Status Report in the Federal Litigation in which they agreed that the claims, defenses and counterclaims raised in the Arbitration Case would be consolidated into the Federal Litigation, each side preserving its respective claims and defenses.

RECITAL F

In the Federal Litigation, Plaintiff filed an amended complaint on June 21, 2002, asserting claims against Defendants for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, defamation, injurious falsehood, interference with prospective business relations and conspiracy (the "Amended Complaint").

2

RECITAL G

In the Federal Litigation, Defendants asserted counterclaims against Plaintiff for breach of contract (two counts), breach of fiduciary duty and an intentional tort arising out of Plaintiff's employment relationship with Defendants as their General Counsel (the "Counterclaim").

RECITAL H

By Order dated February 14, 2003, the United States District Court for the District of Delaware dismissed Plaintiff's claims for interference with prospective business relations and conspiracy as to each Defendant, with prejudice, and Plaintiff's claims for breach of the implied covenant of good faith and fair dealing and breach of contract as to defendant Abessinio, only, with prejudice.

RECITAL I

This Agreement is a *bona fide* good faith settlement of Plaintiff's claims against Defendants and Defendants' claims against Plaintiff arising out of, or in any way related to, Plaintiff's Employment Agreement and/or employment relationship with Defendants.

RECITAL J

As used herein, "Settlement Sum" shall mean the amount stated on a sealed record with the United States District Court for the District of Delaware on February ___, 2003.

RECITAL K

This release is intended to be a General Release.

NOW, **THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties, intending to be legally bound, agree as follows:

3

1.  INCORPORATION

All of the above Recitals are hereby incorporated into this Agreement by reference as though fully set forth herein verbatim.

2.  VOLUNTARY DISMISSAL

The parties hereby stipulate to the voluntary dismissal of all claims in the Federal Litigation, except for the Plaintiff's claim for defamation, pursuant to the Stipulation of Dismissal, a copy of which is attached hereto as Exhibit "A." Specifically, Plaintiff shall voluntarily dismiss all claims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, injurious falsehood, interference with prospective business relations and conspiracy against all Defendants in the Federal Litigation, with prejudice.

Plaintiff hereby releases, acquits and forever discharges Defendants from any and all past, present or future claims, damages, causes of action, liens, demands, debts, liabilities, controversies or expenses, known or unknown, asserted or unasserted, liquidated or unliquidated, fixed or contingent, of any nature whatsoever which Plaintiff has or claims to have, or in any manner growing out of Plaintiff's claims as alleged in the Amended Complaint or any allegations related thereto, from the beginning of time to the date of this Agreement, including, but not limited to, any claims for attorneys fees, claims for benefits under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), and any claims whatsoever arising out of Plaintiff's Employment Agreement and/or employment relationship with the Defendants.

Plaintiff covenants and agrees not to sue or otherwise bring any suit or claim in any court or other forum against Defendants, or any of them, arising out of or relating to any of the claims voluntarily dismissed hereunder. Plaintiff further agrees that Plaintiff shall be liable to

4

Defendants for damages, including attorneys' fees and expenses (whether or not allowed by law), as a result of any violation by Plaintiff of the covenant not to sue contained in this paragraph.

3.    RELEASE – DEFAMATION CLAIM

In consideration of the payment made by Defendants in the amount and manner set forth in Paragraph 6 hereof, Plaintiff hereby releases, acquits and forever discharges Defendants from any and all past, present or future claims, damages, causes of action, liens, demands, debts, liabilities, controversies or expenses, known or unknown, asserted or unasserted, liquidated or unliquidated, fixed or contingent, of any nature whatsoever which Plaintiff has or claims to have, or in any manner growing out of Plaintiff's claim for defamation as alleged in the Amended Complaint or any allegations related thereto from the beginning of time to the date of this Agreement.

In consideration of Plaintiff's dismissal of all claims in the Federal Litigation in the manner set forth in Paragraph 6 hereof, and Plaintiff's Release as set forth herein, Defendants hereby release and forever discharge the Plaintiff from any and all past, present or future claims, damages, causes of action, liens, demands, debts, liabilities, controversies or expenses, known or unknown, asserted or unasserted, liquidated or unliquidated, fixed or contingent, of any nature whatsoever which Defendants have or claim to have, or in any manner growing out of the claims alleged in Defendants' Counterclaim and the negotiation, operation or termination of the Employment Agreement or employment relationship including, without limitation, any and all claims for damages related to the Federal Litigation, known or unknown damages, expenses, liens, demands, causes of action or claims, from the beginning of time to the date of this Agreement.

5

This Release and Discharge shall be a fully binding and complete settlement between the parties to this Agreement. This Release is intended to, and does hereby fully and completely, extinguish any and all claims the Plaintiff or Defendants have, or may have, against each other arising out of, or in any way related to, the claims set forth in the Amended Complaint and the Counterclaim, relating to the Employment Agreement and the employment relationship which existed between the parties.

4.    UNKNOWN CLAIMS AND INJURIES

This is a General Release by the parties of and from any and all, present or future, state or federal, civil or criminal actions, causes of action, claims, liens, injuries, costs, liens, demands, debts, liabilities, controversies and expenses and all future developments therefrom including, but not limited to, all claims or rights of action for damages which the parties have, or may hereinafter have, resulting from the claims alleged in the Amended Complaint and the Counterclaim. The parties hereto understand that they may have suffered injuries and damages that are unknown to them at present or that unknown complications of present known injuries may arise, develop or be discovered in the future. The parties acknowledge that the consideration paid and action taken as specified in Paragraph 6 of this Agreement are intended to, and do, release and forever discharge the parties from any and all claims by them in regard to such unknown or future damages, injuries or complications, including effects or consequences thereof regardless of mistake of law or fact. The parties hereby waive any right to assert against each other in the future any claim not known or suspected even though, if such claims were known, such knowledge would materially affect the terms of this Agreement.

6

5.    <u>ATTORNEYS FEES, COSTS AND OTHER EXPENSES</u>

Each party hereto shall bear its own attorneys fees, costs and all other fees arising in connection with or related in any way to the Federal Litigation, the Arbitration Case, this Agreement and the matters and documents referred to herein and all related matters.

6.    <u>CONSIDERATION</u>

In consideration of the release of liability as set forth in Paragraphs 3 and 4 above, Defendants shall pay the Plaintiff the Settlement Sum in full and final settlement of Plaintiff's claim for defamation against the Defendants, within five (5) business days after complete execution of this Agreement.

7.    <u>REPRESENTATIONS</u>

The parties understand and acknowledge that the consideration paid pursuant to Paragraph 6 is all the monies and/or property ever to be paid by either of them or their heirs, executors, administrators, assigns, past, present and future agents, employees, principals, shareholders, representatives, predecessors, successors, parents, subsidiaries, divisions, officers, insurers, directors, distributors, wholesalers, dealers, affiliates, and attorneys as a result of or in any way arising out of or connected with the claims alleged in the Amended Complaint and the Counterclaim.

8.    <u>ADEQUATE CONSIDERATION; DENIAL OF LIABILITY</u>

The parties agree and acknowledge that they and their respective attorneys have received from each other the compensation and action specified in Paragraph 6 above as a full, complete, final and binding compromise of matters involving disputed issues herein regardless of whether too much or too little may have been paid; that both parties have expressly denied and continue

7

to expressly deny any liability or wrongdoing in connection with claims alleged in the Amended Complaint and the Counterclaim; and that the consideration paid or the action taken shall not be considered an admission by any party of any liability or wrongdoing; and that no past or present wrongdoing on the part of either party shall be implied by such payment or action.

### 9.    CONFIDENTIALITY

The terms of this Agreement are completely confidential, and shall not be disclosed to anyone other than the parties or their respective attorneys, accountants and other parties to whom disclosure is necessary pursuant to an action to enforce this Agreement or defend the same, or in connection with tax filings, or by compulsion of law. No party shall disclose any information concerning this Agreement to any person, including, any of Defendants' employees, past, present or future. Violation of the confidentiality provisions contain herein may be enjoined and, whether or not enjoined , shall subject the violating party to liability for damages, including attorneys fees and expenses. Additionally, violation of this paragraph shall constitute breach of this Agreement requiring the violating party to disgorge any and all benefits received under this Agreement, including, but not limited to, the Settlement Sum, if applicable.

### 10.    COMMUNICATION

Plaintiff shall not communicate with CCB, ACS or any and all of their past, present and future agents, employees, representatives, predecessors, successors, parents, subsidiaries, divisions, officers, principals, shareholders, insurers, directors, assigns, distributors, wholesalers, dealers, affiliates and attorneys; or Rocco Abessinio and any of his heirs, heirs at law, next of kin, successors, assigns, employees, attorneys and representatives, concerning any matters relating to the claims of the Amended Complaint, the Counterclaim or this Agreement. A

8

violation of this paragraph shall be considered a breach of this Agreement entitling defendant to equitable relief and attorneys fees and expenses as more fully set forth in paragraph 15, below. Additionally, violation of this paragraph shall constitute breach of this Agreement requiring the violating party to disgorge any and all benefits received under this Agreement, including, but not limited to, the Settlement Sum, if applicable.

11.    NON-DISPARAGEMENT

Plaintiff shall not disparage or defame, either by written or spoken word, CCB, ACS or any and all of their past, present and future agents, employees, representatives, predecessors, successors, parents, subsidiaries, divisions, officers, principals, shareholders, insurers, directors, assigns, distributors, wholesalers, dealers, affiliates and attorneys; or Rocco Abessinio and any of his heirs, heirs at law, next of kin, successors, assigns, employees, attorneys and representatives, via any medium whatsoever, including, but not limited to, e-mail and communications via the internet, either in his own name or under assumed names, identities or aliases. Defendants, and those acting at defendants' direction, shall not disparage, either by written or spoken word, Kenneth J. Marino via any medium whatsoever, including, but not limited to, e-mail and communications via the internet, either in their own names or under assumed names, identities or aliases. A violation of this paragraph shall be considered a breach of this Agreement entitling the violating party to equitable relief and attorneys fees and expenses as more fully set forth in paragraph 15, below. Additionally, violation of this paragraph shall constitute breach of this Agreement requiring the violating party to disgorge any and all benefits received under this Agreement, including, but not limited to, the Settlement Sum, if applicable.

9

12.   TAXES

Plaintiff shall be solely responsible for all federal, state and local taxes, if any, to which his receipt of the Settlement Sum may be subject. Defendants make no representations, warranties or claims with respect to any tax liability or tax treatment of the Settlement Sum.

13.   GOVERNING LAW

This Agreement shall be interpreted and construed under the laws of the state of Delaware.

14.   EXCLUSIVE JURISDICTION

The parties hereto irrevocably consent to the exclusive jurisdiction of the United States District Court for the District of Delaware for any claims or disputes between or among the parties arising out of, or relating to, this Agreement, and said court shall reserve jurisdiction to enforce the provisions of this agreement.

15.   COVENANT NOT TO SUE

The parties covenant and agree not to sue or otherwise bring any suit or claim with any court against each other for any claims released by, or dismissed in connection with, this Agreement. The parties further covenant and agree that any party violating this paragraph is solely liable for any and all attorneys' fees and expenses (whether or not allowed by law) of the other parties as a result of any such suit by the violating party.

16.   ENTIRE AGREEMENT

This Agreement contains the entire agreement between the parties with regard to the matters set forth herein. This is the only agreement between the parties with respect to the matters addressed herein and there are no oral or side representations or agreements that affect

10

the subject matter of this Agreement. This Agreement may only be modified by an instrument in writing which is agreed to and signed by all parties to this Agreement.

### 17.    DELIVERY OF REQUEST FOR ORDER TO MARK ACTION SETTLED, DISCONTINUED AND ENDED

Concurrent with the execution of this Agreement, counsel for Plaintiff shall execute the Stipulation of Dismissal attached hereto as Exhibit "A" and deliver the executed original of that Stipulation to defense counsel for filing with the United States District Court for the District of Delaware, as a matter of record. Each party shall bear its own attorneys' fees, expenses and other costs in connection with the dismissal of the Federal Litigation. The parties agree that the Federal Litigation shall be dismissed in its entirety by entry of the Stipulation of Dismissal, and without costs or attorneys' fees to any party and that said Order shall bar any future action by either party against the other, notwithstanding any failure on the part of any party to object to improper joinder of claims or failure to join claims required to be joined in said civil actions.

### 18.    WARRANTY OF CAPACITY TO EXECUTE AGREEMENT

The parties hereby represent and warrant that they are the real parties in interest in the Federal Litigation and have the sole right and exclusive authority to execute this Agreement on their respective behaves.

### 19.    HEARINGS

Section headings in this Agreement are inserted for convenience only and do not constitute part of this Agreement.

### 20.    DRAFTING OF DOCUMENT AND RELIANCE

Defendants' attorneys and Plaintiff's attorneys have jointly drafted this Agreement. Each

party warrants, represents and agrees, however, that they are not relying on the advice of the other or the other's attorneys as to the legal and/or income tax consequences of this settlement or Agreement. Furthermore, each party hereby releases and discharges the other and its attorneys from any and all claims, rights, damages and costs including, but not limited to, reasonable attorneys' fees or expenses of any nature whatsoever that may hereinafter arise by reason of the legal or income tax consequences of this Agreement.

21.    <u>EXECUTION IN COUNTERPARTS</u>

The parties agree that this document may be executed in counterparts.

THE PARTIES FURTHER STATE THAT THEY HAVE CAREFULLY READ AND/OR HAD READ TO THEM THE FOREGOING AGREEMENT, CONSISTING OF THIS PAGE AND ELEVEN OTHER PAGES, EXCLUSIVE OF THE SIGNATURE PAGE, AND THAT THEY KNOW, UNDERSTAND AND AGREE WITH THE CONTENTS HEREOF AND THAT THEY HAVE SIGNED THIS DOCUMENT AS THEIR OWN VOLUNTARY ACT AND DEED BECAUSE THEY HAVE AGREED TO THE SETTLEMENT AND THE AGREEMENT CONTAINED HEREIN.

WITNESSES:                          BY:

_____            _____
                                   Kenneth J. Marino

_____            _____
                                   Cross Country Bank

                                   Title: _____

_____            _____
                                   Applied Card Systems, Inc.

                                   Title: _____

_____            _____
                                   Rocco A. Abessinio

13

WITNESSES:                           BY:

_____          _____
Kenneth J. Marino

_____          _____
Cross Country Bank

Title: _Sr EVP_____

_____          _____
Applied Card Systems, Inc.

Title: _Chairman_____

_____          _____
Rocco A. Abessinio

**EXHIBIT "D"**

**EXHIBIT "D"**

**EXHIBIT "D"**

**EXHIBIT "D"**

**EXHIBIT "D"**

IN THE CIRCUIT COURT OF KANAWHA
COUNTY, WEST VIRGINIA

CROSS COUNTRY BANK   :
800 Delaware Avenue    :
Wilmington, DE 19801    :
    and      :   CIVIL ACTION
APPLIED CARD SYSTEMS, INC. :
P.O. Box 310730     :   NO.
Boca Raton, FL  33431   :
           :
      Plaintiffs, :
           :
    v.       :
           :
DARRELL V. McGRAW, JR.,  :
ATTORNEY GENERAL OF THE :
STATE OF WEST VIRGINIA,  :
           :
           :
     Defendant. :

## AFFIDAVIT OF ROCCO A. ABESSINIO

I, Rocco Abessinio, having been duly sworn, state as follows:

1. I am over 18 years of age and am competent to testify regarding the matters in this Declaration.

2. I am Chairman of the Board of both Cross Country Bank ("CCB") and Applied Card Systems, Inc. ("ACS") (hereafter, together, "CCB"). I am authorized to make this Affidavit, and the facts set forth herein are based upon my personal knowledge.

3. From in or about late 1998 or early 1999 through September 30, 2000, while he was a lawyer at Blank, Rome, Comisky & McCauley ("Blank Rome"), Kenneth J. Marino, Esq. provided legal services to CCB primarily in connection with consumer compliance issues. During this period, Mr. Marino provided no non-legal services to CCB concerning litigation matters and provided no non-legal advice to CCB.

4.      From October 1, 2000 through his termination for cause by CCB, effective February 14, 2001, Mr. Marino served as Executive Vice President and General Counsel to CCB. As Executive Vice President and General Counsel, Mr. Marino was CCB's chief legal officer, responsible for obtaining information from me and other officers and employees of CCB and advising CCB concerning their obligations under federal and state consumer credit, banking and other laws, performing legal work concerning securitizations and overseeing CCB's litigation. Mr. Marino was hired to ensure the efficient delivery of outside legal services, provide legal expertise concerning the interplay of consumer lending laws and regulations (*e.g.*, Federal Reserve Board Regulations B and Z, state consumer lending laws) to CCB's offerings and products and to oversee, direct and manage litigation facing CCB. Mr. Marino was not expected or requested to provide non-legal advice to CCB.

5.      CCB terminated Mr. Marino for cause, effective February 14, 2001. Mr. Marino's termination was *not* a result of any concerns or complaints of Mr. Marino about the regulatory and legal compliance of CCB. Shortly following his termination, Mr. Marino brought a wrongful termination lawsuit against CCB and, during the course of the ensuing proceedings, made repeated threats against CCB and me personally in an effort to extort payments from CCB. In my entire business experience, I have never encountered anyone who manifested the level of anger, hostility and total disregard for ethical standards shown by Mr. Marino following his termination.

6.      Mr. Marino's lawsuit was ultimately settled by payment of a fraction of the amount demanded by Mr. Marino.

7.      I have reviewed Mr. Marino's affidavit, dated September 4, 2003. Until the affidavit was filed by the State of Minnesota in a case in that state, I was unaware, and to the

best of my knowledge, CCB's other employees and representatives were unaware, that Mr.

Marino was in contact with the State of New York, that the State of New York had sent a

subpoena to Mr. Marino, or that Mr. Marino had executed an affidavit.

8.    CCB considers any and all information about CCB that they provided to

Mr. Marino or that Mr. Marino obtained during the course of his representation (both while Mr.

Marino was at Blank Rome and while he was employed by CCB) to be confidential information

protected by the attorney-client privilege.  CCB has not waived the attorney-client privilege or

authorized Mr. Marino to waive the privilege on its behalf.

9.    CCB believes that it should not be placed in the position of having to

respond to statements about privileged matters made by their former counsel. CCB intends to

respond in any proceeding on the legal and factual merits and believes there should be, and is, no

requirement that CCB refute improper statements made by former counsel in breach of his

fundamental duties as a lawyer. Suffice it to say that Mr. Marino's affidavit presents a false and

distorted picture of CCB, my statements and actions, Mr. Marino's conduct, and communications

between Mr. Marino and me.  Mr. Marino's affidavit should be disregarded.

10.    I have never instructed any executives or other employees of ACS or CCB

to disregard or fail to comply with any applicable federal or state law that applies to ACS or

CCB. CCB and ACS attempt to comply with all applicable laws, and I expect and require all

officers and employees to comply with all applicable laws at all times.

Dana Gutierrez
Commission # DD 066593
Expires Nov. 20, 2005
Bonded Thru
Atlantic Bonding Co., Inc.

Rocco A. Abessinio

Sworn to and subscribed
before me this 27th
day of February, 2004



before me this     day

of            , 2004

_____

Notary Public



Dana Gutierrez
Commission # DD 066593
Expires Nov. 20, 2005
Bonded Thru
Atlantic Bonding Co., Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


KENNETH J. MARINO                          :
                                           :
      V                                    :
                                           :      No. 07-1389
CROSS COUNTRY BANK and                     :
APPLIED CARD SYSTEMS                       :


_____ **ORDER** _____

       And now this        day of          2007, upon review of the Plaintiff's

Motion to Amend his Complaint and the Defendant's response thereto, and oral argument

if any , it is hereby ORDERED AND DECREED that the Motion is GRANTED.




_____
J