## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KENNETH J. MARINO,                          :
                                            :
                    Plaintiff,              :
                                            :
        v.                                  :   Civ. No. 07-426-GMS-MPT
                                            :
CROSS COUNTRY BANK and                      :
APPLIED CARD SYSTEMS, INC.,                 :
                                            :
                    Defendants.             :



### REPORT AND RECOMMENDATION

**Procedural Background**

Plaintiff Kenneth J. Marino ("plaintiff") originally filed this action against

defendants, Cross Country Bank and Applied Card Systems, Inc. ("defendants"), in

Pennsylvania state court on December 1, 2006[1], wherein he sought relief for wrongful

use of civil proceedings, pursuant to a Pennsylvania statute, 42 Pa. Cons. Stat. Ann.

§ 8351 et seq. ("Dragonetti Act"), in connection with defendants' suit against plaintiff for

breach of contract and fiduciary duty in *Cross Country Bank, et al. v. Marino, Court of*

*Common Pleas of Chester County PA*, C.A.  No. 04-03203 ("the Chester County

Case").  Defendants removed the present action to the United States District Court for

the Eastern District of Pennsylvania on April 5, 2007.  Defendants subsequently filed an

answer and plaintiff filed a motion to amend his complaint.  On July 5, 2007, the case

was transferred to the District of Delaware and plaintiff's motion to amend complaint

was denied.

---

[1] *Marino v. Cross Country Bank*, Court of Common Pleas of Delaware County, PA, C.A. No. 06-
16898.

Currently before this court are the parties' cross motions for summary judgment, and defendants' motion to strike plaintiff's affidavit in part or in whole. For the reasons stated below, the court recommends that plaintiff's and defendants' motions for summary judgment be denied, and that defendants' motion to strike plaintiff's affidavit be granted in part.

**Factual Background**

Prior to October 1, 2000, plaintiff was employed by Blank Rome and occasionally represented defendants. On October 1, 2000, plaintiff entered into an employment agreement and became general counsel for defendants. Plaintiff's employment contract included a non-disclosure provision that prohibited him from divulging trade secrets, policies, prospects, and financial conditions about defendants both during and after his employment, with the only exception being when defendants consented in writing. On February 14, 2001, plaintiff was terminated from his position as general counsel.

On January 25, 2002, plaintiff filed an action for wrongful termination in the United States District Court for the District of Delaware, asserting claims arising out of his employment relationship with defendants ("2002 Case"). Plaintiff alleged that he was wrongfully dismissed because of his efforts to change the predatory lending practices of defendants. Defendants filed counterclaims for breach of contract, breach of fiduciary duty, and an intentional tort arising out of the employment relationship. Some of plaintiff's claims were dismissed with prejudice. The parties settled the remaining disputes arising out of their employment relationship on May 21, 2003. All parties agreed and signed a settlement agreement ("2002 Settlement").

2

The 2002 Settlement stipulated to the voluntary dismissal of all plaintiff's pending claims, except for the discrimination claim. Specifically, plaintiff voluntarily dismissed with prejudice all claims for breach of contract, breach of good faith and fair dealing, fraud, injurious falsehood, interference with prospective business relations, and conspiracy against defendants. In addition, plaintiff released and acquitted defendants from any past, present, or future claims, damages, or causes of action arising out of the employment agreement and/or employment relationship with defendants.

The 2002 Settlement also included a general release by both parties of any present or future causes of action. In addition, the 2002 Settlement contained a mutual non-disparagement clause which required that neither party could disparage nor defame the other orally or in writing, via any medium. Any breaches would void the entire 2002 Settlement requiring the violating party to disgorge all benefits received under the settlement.

In March 2003, the Attorney General of the State of New York filed a complaint against defendants accusing them of fraudulent predatory lending. According to plaintiff, he submitted an affidavit ("the Marino Affidavit") pursuant to a subpoena issued by the New York Attorney General. Defendants, however, maintain that the New York Attorney General did not serve a subpoena and that plaintiff freely volunteered his affidavit.

On January, 2004, plaintiff filed a complaint in this court ("the RLF Case") against Stephen E. Hermann ("Hermann") and the law firm of Richards, Layton & Finger ("RLF"). Plaintiff alleged breach of fiduciary duty by Hermann and RLF. In the RLF Case, plaintiff attributed his termination from defendants to a "smear campaign"

3

conducted by Hermann.[2]  That action was dismissed for failure to state a cognizable

claim against Hermann and RLF under *respondeat superior*, which was affirmed by the

Third Circuit.[3]  Defendants argue that during trial in that case plaintiff made disparaging

remarks about them and that those remarks violated the 2002 Settlement.

On June 24, 2004, the New York Supreme Court held that defendants had

engaged in fraudulent predatory lending and were ordered to cease all such practices.

On December 1, 2005, the New York Appellate Court upheld that decision.  Ultimately,

the New York Attorney General did not use the Marino Affidavit in prosecuting the case.

In 2003, the Marino Affidavit was forwarded by the New York Attorney General to

the Minnesota Attorney General, who used it in an action pending in Minnesota state

court against defendants.  Defendants successfully moved to strike the Marino Affidavit

in the Minnesota action.  The Minnesota state court noted that the Marino Affidavit

violated the attorney-client privilege and the confidentiality agreement which was

negotiated by the parties upon the termination of plaintiff's employment.  Plaintiff was

not a party to the Minnesota case and did not have an opportunity to defend the Marino

Affidavit.

On April 5, 2004, defendants petitioned the District of Delaware to enforce the

2002 Settlement and to vacate the dismissal of the 2002 Case on the grounds that

plaintiff violated the non-disparagement provision.  On November 15, 2004, this court

vacated the dismissal order and ordered plaintiff to repay the settlement proceeds

because his comments in the RLF Case breached the non-disparagement provision of

---

[2] *Marino v. Richards Layton & Finger*, 160 Fed. Appx. 268 (3d Cir. 2005).
[3] *Id.*

4

the 2002 Settlement.

On April 26, 2004, while the motion to strike the Marino Affidavit was pending in the Minnesota action, defendants filed the Chester County Case, wherein defendants asserted breach of contract, breach of fiduciary duty, and injunctive relief against plaintiff. Defendants contended that all claims arose out of two infractions: plaintiff's filing of the RLF Case and the Marino Affidavit. During the pendency of the Chester County Case, plaintiff agreed to a temporary injunction prohibiting him from divulging the information or engaging in the actions of which defendants complained.

On August 24, 2005, the court dismissed the Chester County Case. That court found that the 2002 Settlement released plaintiff from all obligations under his employment contract, and therefore, he was not in breach. In addition, the court held that plaintiff did not breach his fiduciary duty to defendants nor any Delaware rule of professional conduct in providing the Marino Affidavit to the Attorney General of the State of New York. The court further concluded that there was no breach of attorney-client privilege and that there was no evidence that it would be violated in the future by the Marino Affidavit. Ultimately, the court held that defendants were not entitled to an injunction to stop plaintiff from responding to requests for information from law enforcement officials.

On December 1, 2006, plaintiff filed the present action against defendants for wrongful use of proceedings claiming that defendants violated the Dragonetti Act by filing the Chester County Case.

**Summary Judgment**

Summary judgment is appropriate if the "pleadings, depositions, answers to

5

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."[4] Once there has been adequate time for discovery, Rule 56(c) mandates judgment against the party who "fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[5] When a party fails to make such a showing, "there can be no 'genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[6] The moving party is therefore entitled to judgment as a matter of law because "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."[7] A dispute of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[8]

The moving party bears the initial burden of identifying portions of the record which demonstrate the absence of a genuine issue of material fact.[9] However, a party may move for summary judgment with or without supporting affidavits.[10] Therefore, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence supporting the nonmoving

---

[4] Fed. R. Civ. P. 56(c).
[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[6] *Id.* at 323.
[7] *Id.*
[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[9] *Celotex*, 477 U.S. at 323.
[10] *Id.*

6

party's case."[11]

If the moving party has demonstrated an absence of material fact, the nonmoving party must then "come forward with specific facts showing that there is a genuine issue for trial."[12] If the nonmoving party bears the burden of proof at trial, he "must go beyond the pleadings in order to survive a motion for summary judgment."[13] That party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial."[14] At the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."[15] Further, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[16] The threshold inquiry therefore is "determining whether there is a need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[17]

This standard does not change merely because there are cross-motions for summary judgment.[18] Cross-motions for summary judgment

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified  or that the losing party waives judicial consideration and

---

[11] *Id.* at 325.
[12] Fed. R. Civ. P. 56(c).
[13] *Yeager's Fuel v. Pennsylvania Power & Light Co.*, 22 F.3d 1260, 1273 (3d Cir. 1994).
[14] *Anderson*, 477 U.S. at 248.
[15] *Id.* at 249.
[16] *Id.*
[17] *Id.* at 250.
[18] *Appleman's v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

determination whether genuine issues of material fact exist.[19]

Moreover, "[t]he filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party."[20]

**Dragonetti Act**

The Dragonetti Act codified the common law tort of wrongful use of civil proceedings in Pennsylvania.[21]  "The tort is interpreted and applied broadly against those who use legal process as a 'tactical weapon to coerce a desired result that is not the legitimate object of the process.'"[22]  Dragonetti Act claims may be brought against both the parties and the attorney who represent them.[23]

In order to prevail on a Dragonetti Act claim, plaintiff must prove that defendants "[took] part in the procurement, initiation or continuation of civil proceedings against another" and "(1) acted in a grossly negligent manner or without probable cause and primarily for an improper purpose; and (2) the proceedings terminated in favor of the person against whom they were brought."[24]

422 Pa. Con. Stat. § 8352 dictates whether there is probable cause to initiate, continue, or procure a civil action against another.[25]  The statute provides that a person who participates in "the procurement, initiation of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon

---

[19] *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).
[20] *Krups v. New Castle County*, 732 F. Supp. 497, 505 (D. Del. 1990).
[21] 42 Pa. Con. Stat. §§ 8351-8354.
[22] *Schmidt v. Currie*, 470 F. Supp. 2d 477, 480 (E.D. Pa. 2005)(quoting *Gen. Regractories v. Fireman's Funds Ins.*, 337 F.3d 297 (3d Cir. 2003)).
[23] *Id.*
[24] 42 PA. Cons. Stat. § 8351.
[25] *Broadwater v. Sentner*, 725 A.2d 779, 782-3 (Pa. Super. 1999).

which the claim is based" and either:

> (1) reasonably believes that under those facts the claim may be valid under the existing or developing law; 2) believes to this effect in reliance upon the advice of counsel, sough in good faith and given after full disclosure of all relevant facts within his knowledge and information; or (3) believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposing party.[26]

Further, the Dragonetti Act requires gross negligence, which Pennsylvania courts have defined as the "want of scant care" or "lack of slight diligence or care, or a conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party, who may typically recover exemplary damages."[27]

"A party seeking redress under the Dragonetti Act bears a heavy burden," because plaintiff must prove either lack of probable cause or gross negligence and that the underlying action was filed for an improper purpose.[28]  The Dragonetti Act states that any "procurement, incitation or continuation of civil proceedings against another for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based"[29] is an improper purpose.

**Parties' Positions on the Motion to Strike Affidavit:**

Defendants move to strike the Marino Affidavit in part because portions of it are neither based on personal knowledge, nor include admissible evidence.  Defendants contend that portions of the affidavit based on "information and belief" or state plaintiff's opinion are improper under Fed. R. Civ. P 56(e).

---

[26] 42 Pa. Cons. Stat. § 8352.
[27] *Hart v. O'Malley*, 781 A.2d 1211, 1218 (Pa. Super 2001).
[28] *US Express Lines Ltd v. Higgins*, 281 F.3d 383, 394 (3rd Cir. 2003).
[29] 42 Pa. Cons. Stat. § 8351.

Defendants observe that Rule 56(e) requires that an affidavit be made "on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."[30]  Defendants allege that paragraphs 4 and 6 contain plaintiff's opinion and that paragraph 5 and 13 are plaintiff's assumption.  In addition, they contend that paragraph 7 includes statements made by plaintiff on "information and belief."

Defendants maintain that affidavits based on information and belief should be disregarded.  They insist that paragraph 8 of the affidavit purports to incorporate by reference the amended complaint which was earlier denied.  Defendants further posit that the phrasing of paragraph 10 suggests to be the testimony of a third party and should be struck.

Plaintiff argues that he attempted to file a substitute affidavit and filed a praecipe directing the Clerk of the Court to substitute the original deficient affidavit.  Because of his efforts, he purports that the defendants' motion to strike his affidavit is now moot since all opinion language was removed.

**Analysis of Motion to Strike Affidavits:**

In *Maldonado v. Ramirez*, the Third Circuit provided that summary judgment could not be granted based on a conclusory affidavit because it failed to meet the requirements under Fed. R. Civ. 56(e) that an affidavit "be based 'on personal knowledge,' must establish 'such facts which would be admissible' and must 'show affirmatively that the affiant is competent to testify in all matters stated therein.'"[31]

---

[30] Fed. R. Civ. P. 56(e).
[31] 757 F.2d 48, 50 (3d Cir. 1985).

In *Blair v. Scott Specialty Gases*, the court concluded that affidavits must "ordinarily set forth facts, rather than opinions or conclusions" in order to be sufficient to satisfy the standard for summary judgment.[32]  In addition, this district court has previously struck affidavits which were based on "information and belief."[33]

The Marino Affidavit fails to meet the requirements of Rule 56(e) because certain paragraphs are merely opinion, and not based on plaintiff's personal knowledge. Plaintiff admits that the original affidavit was in fact not sufficient because certain paragraphs contained inappropriate opinion testimony.  In response, he attempted to substitute a new affidavit which purportedly corrected the opinion paragraphs in the original Marino Affidavit.

As a result, plaintiff argues that defendants' motion to strike is moot because in his second affidavit all opinions are removed.  However, rather than eliminating "opinions", plaintiff merely deleted phrases, such as, "in my opinion," "on information and belief," and "it was my opinion."  By merely deleting the word "opinion", plaintiff does not erase that those paragraphs merely recite his opinion.

Defendants further contend that there is no rule that allows plaintiff to respond to the motion to strike by filing a praecipe to substitute his affidavit.  In addition, defendants urge that the proposed substitute affidavit was not timely filed consistent with this court's local rules.

While there is no rule that strictly allows that type of response, there is also no

---

[32] 283 F.3d 595, 608 (3rd Cir. 2002).
[33] *New Hampshire Fire Ins. Co. v. Perkins*, 30 F.R.D. 382, 383 (D. Del. 1962); *see also Freeman v. Minnesota Mining and Mfg. Co.*, 675 F. Supp. 877, 887 (D. Del. 1987);

rule that forbids a party to file a motion to substitute his affidavit. However, the same problems that existed in the original affidavit continue in the substitute affidavit.

Paragraph 4 of the original affidavit read "I continued in that role for approximately 18 weeks, before being in my opinion, wrongfully terminated." In the proposed substitute affidavit, that sentence contains the same except the words "in my opinion" are removed.[34] Eliminating the words "in my opinion" does not magically transform that statement into fact. The statement is still plaintiff's conclusory opinion.

Paragraph 5 originally read "I advised them that in my opinion as General Counsel they were engaging in illegal debt collection practices." In the substitute affidavit the "in my opinion" is replaced by "in my capacity" but the rest of the sentence remains entirely the same.

Paragraph 6 also contains plaintiff's opinion regarding why plaintiff was discharged. The relevant part of paragraph 6 reads "[i]t was my opinion that the grounds for my wrongful termination were 100% false, fictitious and fraudulent . . . ." The substitute affidavit only removed the words "[i]t was my opinion" and the rest of the paragraph remained intact. Therefore, the substitute affidavit continues to express plaintiff's unsupported, bald conclusions, rather than facts or the bases for his conclusions.

Also, paragraphs 4 and 7 of the original affidavit contain the language "information and belief" which is inconsistent with the personal knowledge requirement

---

[34] The sentence now reads "I continued in that role for approximately 18 weeks, before being wrongfully terminated."

12

of Rule 56, and also fails to show that plaintiff is competent to testify on that matter.[35]
In paragraph 7, "on information and belief" is removed in the substitute affidavit, but
everything else remains the same.  Paragraph 7 fails to meet the requirements of Rule
56(e) because it provides plaintiff's assumptions as to why he was terminated without
providing any supporting facts.

Paragraph 8, which was not modified by the substitute affidavit, clearly
references certain "counts" in the amended complaint[36] filed in the 2002 Case.
However, a significant part of that complaint was dismissed.[37]  Moreover, plaintiff failed
to provide a copy of that complaint to the court for review in reference to the motions for
summary judgment herein.  In the absence of the alleged facts upon which plaintiff
relies in support of that paragraph, and thereby in opposition to defendants' motion for
summary judgment, and the previous dismissal of a number of counts by this court in
the 2002 Case, this paragraph is unsupport.  It is not the obligation of the court to ferret
out factual information from other cases previously filed and closed on its docket.[38]  As
a result, paragraph 8 fails to comply with Rule 56(e).

Paragraph 13 in the original affidavit states that "I had no knowledge as to
whether Mr. Fleisher had served Defendants with a copy of the subpoena but assumed
that he had."  This paragraph merely states plaintiff's assumption and guess work and

---

[35] Paragraph 4 of the substitute affidavit reads "[o]n information and belief, that same strategy
provided similar annual tax savings to Mr. Abessinio for subsequent tax years."

[36] Both the original and substitute affidavits provide in paragraph 8 that [f]or additional detailed
factual information . . . , please refer to counts 1 to 31 in the Amended Complaint dated June 21, 2002
. . . (C.A. No. 02-065) . . . ."

[37] See 02-065-GMS D.I. 110 wherein in counts V (interference with prospective business
relations) and VII (conspiracy) were dismissed entirely and counts III (breach of implied covenant of good
faith and fair dealing) and VIII (breach of contract) were dismissed against defendant Abessino.

[38] Skretvedt v. DuPont de Nemours & Co. Inc., 260 Fed. Appx. 531, 536 (3d Cir. 2008); see also
Twist v. Meese, 854 F.2d 1421, 1425 (D.C.C. 1988).

is not changed in the substitute affidavit.

Ultimately, paragraphs 4, 5, 6, 7, 8 and 13 merely provide plaintiff's opinion, assumptions, or bald conclusions rather than providing facts based upon his personal knowledge to support his conclusions.  Because those paragraphs fail to meet the requirements of Rule 56(e), defendants' motion to strike the original affidavit should be granted in part.  Although there is no rule forbidding the substitution of an affidavit, the second affidavit is allowed:  however, the substitute affidavit fails to remedy the problems in the original affidavit and suffers from the same infirmities.  Therefore, paragraphs 4 through 8 and 13 of the substitute affidavit should also be struck.

## Plaintiff's Motion for Partial Summary Judgment

In support of his motion for summary judgment, plaintiff purports that all elements of a Dragonetti Act claim have been satisfied.  Plaintiff claims that defendants procured, initiated, and continued a civil proceeding against him through the Chester County Case.  He contends that defendants acted grossly and without probable cause by procuring, initiating, and continuing the action because they adduced no facts which demonstrated that the action was initiated with probable cause.  Plaintiff insists that defendants knew that he had been released from his duties under the employment contract and were aware that he was merely complying with a subpoena by the New York Attorney General pursuant to an ongoing criminal investigation.  In addition, he notes that the Chester County Case was terminated in his favor.

Plaintiff argues that while the attorney-client privilege is well-established, there are exceptions to the privilege.  Plaintiff contends that one exception is that an attorney may reveal privileged information to establish a defense in a controversy between the

14

attorney and their client. He maintains that privileged information was only revealed because defendants brought an action for replevin against him and waived privilege when such information became public since they did nothing to prevent it from being disclosed.

Further, plaintiff argues that the crime-fraud exception applies, where information imparted relates to or resulted from the client's commission of a crime or fraud in furtherance of which the lawyer's services were employed. Under that exception, the attorney-client privilege is waived. Plaintiff maintains that all information in the Marino Affidavit is covered by that exception.

According to plaintiff, because he was not a party to nor represented in the Minnesota litigation, that court was not provided with all of the relevant facts concerning the Marino Affidavit. As a result, the findings by that court are flawed and do not establish a reasonable basis that the Marino Affidavit violated the 2002 Settlement. Therefore, defendants' reliance on that decision is misplaced.

Plaintiff contends that defendants prosecuted the Chester County Case based on an improper purpose. He claims that the circumstances surrounding that matter demonstrate that defendants knew, or should have know, that their claims were not meritorious. Plaintiff argues that defendants only initiated the Chester County Case to preclude him from testifying for the New York Attorney General and to prevent the Marino Affidavit from being used against the defendants in other cases.

Lastly, plaintiff alleges that as a direct result of defendants' improper pursuit of the Pennsylvania action, he suffered monetary damages and injury to his reputation, including incurring attorney fees to defend the Chester County Case and additional fees

15

for the instant matter.

**Analysis of Plaintiff's Motion for Partial Summary Judgment**

For plaintiff to be successful on a motion for summary judgment, no genuine issue of material fact can exist.[39]  A genuine issue of material fact occurs when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[40]  The first two requirements of the Dragonetti Act are not contested by defendants and therefore, there is no dispute that defendants initiated a proceeding against plaintiff and that judgment was entered in favor of plaintiff at that proceeding.

Plaintiff, however, must also prove that defendants acted with gross negligence or lacked probable cause by filing the Chester County Case and that they filed the action for an improper purpose.  Defendants argue that plaintiff lost the RLF Case and was found to have violated the 2002 Settlement.  Therefore, defendants contend plaintiff is no longer protected by that agreement.  In addition, defendants argue that probable cause existed to file and continue the Chester County Case because of the facts and their belief that plaintiff violated their attorney-client privilege.  Moreover, defendants note that the Minnesota court agreed with their position and struck the Marino Affidavit finding that it was a clear violation of the attorney-client privilege.

Defendants further emphasized that plaintiff was not entirely successful in the Chester County Case because the court entered a judgment against plaintiff for violating the 2002 Settlement by making disparaging comments during the RLF Case.  Moreover, in that case plaintiff was unsuccessful on his motion for summary judgment.

---

[39] Fed. R. Civ. P. 56(c).
[40] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Defendants argue that plaintiff voluntarily provided the Marino Affidavit to the New York Attorney General, while plaintiff argues that he responded to a subpoena.  In addition, both sides differ as to the extent plaintiff was released by the 2002 Settlement.

Thus, as noted herein, the issues of whether defendants acted with gross negligence or without probable cause and with an improper purpose involve material facts in dispute.  As a result, plaintiff's motion for summary judgment should be denied.

**Defendants' Motion For Summary Judgment**

Defendants claim that in April 2004, they successfully moved for enforcement of the 2002 Settlement and to vacate the dismissal of the 2002 Case on the ground that plaintiff violated the non-disparagement provision.  Defendants note that plaintiff breached that provision when he provided the Marino Affidavit to the New York Attorney General.  Further, they maintain that plaintiff made disparaging comments about them during the RLF Case.

Defendants do not dispute that they initiated and pursued the Chester County Case, and that plaintiff prevailed on the merits.  They submit, however, that plaintiff fails to satisfy the heavy burden of proving that they either acted "in a grossly negligent manner or without probable cause and primarily for an improper purpose."[41]

Although the Chester County Case resulted in a favorable outcome for plaintiff, defendants maintain that probable cause existed to initiate that action because:  (1) the Minnesota court stuck the Marino Affidavit; (2) plaintiff agreed to an injunction in the Chester County Case; (3) plaintiff lost his motion for summary judgment in the Chester

---

[41] 42 PA. Cons. Stat. § 8351.

17

County Case; and (4) this court ordered plaintiff to return the settlement proceeds because he violated the non-disparagement provisions of the 2002 Settlement.

Defendants also emphasize the facts on which the Chester County Case were based: that plaintiff had been counsel to defendants, was privy to confidential and privileged information, filed the RLF Case, prepared the Marino Affidavit, and that the Minnesota court struck the Marino Affidavit because it violated attorney client-privilege. They point out that the Chester County Case was based on the same facts on which the Minnesota court relied to support its holding to strike the Marino Affidavit. Because of all the aforementioned facts, defendants argue that they had reasonable foundation for that action.

In addition, defendants reasonably believed in the validity of the claims in the Chester County Case. They note that all information to which plaintiff had access was confidential and subject to attorney-client privilege, and could only be divulged if it fell within certain exceptions and those exceptions have not been met.

Defendants insist that they were neither grossly negligent nor instituted the Pennsylvania action for an improper purpose. Defendants maintain that the holding by the Minnesota court belies any improper motive.

**Analysis of Defendants' Motion for Summary Judgment:**

Although there is no dispute that the first two requirements of the Dragonetti Act have been met, defendants do contest that they acted with gross negligence, an improper purpose, and without probable cause. Plaintiff notes that defendants knew the stipulations of the 2002 Settlement and that that agreement released plaintiff from any further obligations to them.

18

Because defendants knew that he was released from all previous obligations in the 2002 Settlement, plaintiff insists that the only remaining reason to institute the Chester County Case was to prevent him and the Marino Affidavit from being used in other actions for predatory lending practices against defendants. In the absence of probable cause, plaintiff maintains that defendants' pursuit of the action was not justified. Further, since defendants knew or should have known that plaintiff no longer had any contractual or fiduciary obligation to them, bringing an action to obtain an injunction was without merit, and therefore, was instituted for an improper purpose.

Plaintiff purports that the Minnesota decision does not support defendants' basis for probable cause to file the Chester County Case. Plaintiff was not a party in the Minnesota suit and could not properly defend his affidavit. Further, plaintiff maintains that the facts which the Minnesota court applied in deciding to strike the Marino Affidavit are unclear.

In response, defendants dispute that the Marino Affidavit was provided pursuant to a duly executed subpoena by the New York Attorney General. Although defendants argue that the existence of a subpoena is immaterial, whether plaintiff was acting in accordance to a court order goes directly to the merits of the Chester County Case. As a result, material issues of fact are disputed.

Defendants further contest the effects of the settlement of the wrongful termination action in this court. They dispute that they waived their attorney-client privilege by bringing a replevin claim against plaintiff. In fact, defendants argue that they never brought a replevin action against plaintiff. Moreover, whether defendants caused the facts in the Marino Affidavit to become public, and thereby waived the

19

attorney-client privilege is another disputed material fact in the instant matter.  Because there are genuine issues of material facts, defendants' motion for summary judgment should be denied.

**ORDER AND RECOMMENDED DISPOSITION**

For the reasons contained herein, I recommend that:

(1) Defendants' motion for summary judgment (D.I. 38)  be DENIED.

(2) Plaintiff's motion for partial summary judgment (D.I. 37) be DENIED.

(3) Defendants' motion to strike plaintiff's affidavit (D.I. 48) be GRANTED in part.

(4) Defendants' motion to strike plaintiff's substitute affidavit (D.I. 50) be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.Del.LR 72.1.  The parties may serve and file specific written objections within ten (10) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b).

The parties are directed to the Court's standing Order in Non-Pro Se matters for Objections Filed under Fed. R. Civ. P. 72, dated April 7, 2008, a copy of which is available on the Court's website, www.ded.uscourts.gov.

July 24, 2009                                    /s/ Mary Pat Thynge
                                                      UNITED STATES MAGISTRATE JUDGE

20